NOT DESIGNATED FOR PUBLICATION

No. 112,099

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JERRY SELLERS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON, judge. Opinion filed October 2, 2015.
Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BUSER, J., and WILLIAM R. MOTT, District Judge, assigned.

*Per Curiam*:  Jerry Sellers appeals the district court's denial of his K.S.A. 60-1507 motion alleging ineffective assistance of counsel. First, Sellers argues that the district court erred by finding that he was not prejudiced by one of his attorney's misstatements of law concerning his *Alford* and no contest pleas. He also argues that, contrary to the district court's findings, his attorneys provided ineffective assistance of counsel by failing to file a timely motion to withdraw his pleas and by failing to advise him about the impact of his pleas on subsequent convictions. Finding no error, we affirm the district court's judgment.

1

In September 2007, the State filed a criminal complaint against Sellers charging him with two counts of rape or, in the alternative, aggravated indecent liberties with a child; one count of attempted aggravated criminal sodomy or, in the alternative, attempted criminal sodomy; one count of aggravated criminal sodomy or, in the alternative, criminal sodomy; and two counts of indecent liberties with a child. The State later amended the complaint to alter some of the dates of the alleged offenses. Sellers retained attorneys Randall Fisher and Brent Boyer to represent him in the case. The case proceeded to a jury trial, but on the third day of the trial, the judge declared a mistrial.

A new trial was scheduled for November 18, 2008. But on that date, Sellers and the State reached a plea agreement. The agreement required Sellers to enter an *Alford* plea to count 5 of the complaint, which was a charge of indecent liberties with a child. It also required him to plead no contest to count 6, another charge of indecent liberties with a child. In exchange, the State agreed to dismiss counts 1-4 and to recommend a controlling 128-month prison sentence. This agreement was reduced to writing in a document titled "Tender of Plea of Guilty or No Contest." Sellers signed this document.

During the plea hearing, the district court engaged in a colloquy with Sellers after being informed of his desire to enter a plea. Sellers acknowledged that his pleas would conclude the case. Also as part of this colloquy, Sellers specifically confirmed that he understood that it would be highly unlikely that any judge would allow him to withdraw his pleas later.

Prior to entering his pleas, Fisher addressed the court, saying, "[A]s we understand the procedure under the *Alford* plea he is required to enter a plea of guilty, but with the statement and stipulation that it's not being entered because he believes he's actually guilty, but because of the risk involved." Sellers personally confirmed that he understood this. Later, when the district court asked Sellers for his plea to count 5, the following exchange occurred:

2

"THE COURT:  And I've [alluded] to the *North Carolina vs. Alford* [, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)] case previously, that is the case which we will be operating under, how do you plead then pursuant to your discussions with your attorney and the statements of Mr. Fisher on the record to Count 5?

"MR. SELLERS: Not guilty, Your Honor, with the *Alford* plea.

"[PROSECUTOR]:  That needs to be . . .

"MR. SELLERS: Oh, okay, guilty, *Alford* plea.

"THE COURT: That would be the correct scenario so a plea of guilty pursuant to the *North Carolina vs. Alford*, is that correct?

"MR. SELLERS: Yes, Your Honor."

The State asserted that the factual basis for its charge of indecent liberties with a child on count 5 was presented at the preliminary hearings in this case and at the jury trial that previously ended in a mistrial. Next, the district court allowed Sellers' attorney to present the alibi for count 5 that the defense would have presented at trial. After Sellers pled no contest to count 6, the district court accepted both pleas and found Sellers guilty on both counts.

Prior to sentencing, Sellers filed a motion for downward departure requesting a prison sentence of 128 months in accordance with the plea agreement. At sentencing, Fisher again laid out facts supporting Sellers' alibi. He argued that Sellers' sentences should run concurrently and noted the parties' 128-month recommendation. He further asserted that 128 months was an "extremely harsh" punishment for the events alleged in this case. The State also informed the court that, in accordance with the plea agreement, it recommended a controlling sentence of 128 months in prison.

When Sellers was given an opportunity to speak, he maintained that he was innocent but stated that he entered pleas because he could have faced up to 600 months in prison if he had gone to trial. The district court sentenced Sellers to 120 months for one of his convictions of indecent liberties with a child and 32 months for the other

3

conviction. The district court departed from the plea agreement by ordering these sentences to run consecutively for a total prison sentence of 152 months.

Sellers timely appealed his sentence. That appeal was dismissed pursuant to Supreme Court Rule 7.041a (2014 Kan. Ct. R. Annot. 66) in an opinion filed on July 9, 2010. *State v. Sellers*, No. 102,166, 2010 WL 2816251 (Kan. 2010) (unpublished opinion).

On April 19, 2011, Sellers filed a pro se motion to withdraw plea pursuant to K.S.A. 2014 Supp. 22-3210(d). The district court appointed an attorney to Sellers and held a hearing on the motion on April 29, 2011. At the hearing, the State argued that the motion should be summarily dismissed because Sellers could not show manifest injustice as required by K.S.A. 2014 Supp. 22-3210(d)(2). In response, Sellers' attorney stated that the allegations in his motion indicated he was claiming ineffective assistance of counsel. The district court agreed, but it found there was no basis for finding the necessary manifest injustice and denied the motion. But in doing so, the district court ordered that Sellers' attorney should remain appointed to him for the purpose of refiling his motion to more accurately state his claim.

On July 8, 2011, Sellers filed a K.S.A. 60-1507 motion claiming that he received ineffective assistance of counsel and requested that his convictions be set aside. A pretrial hearing was held on February 11, 2013. The pretrial order identified the following three issues to be tried at the evidentiary hearing:

> "1. Jerry Sellers contends he didn't understand the nature of a no contest or Alford plea. His counsel did not explain the plea would result in conviction. He believed he could be acquitted following the plea.
> "2. Jerry Sellers contends he advised trial counsel of his desire to withdraw his plea within ten days of entering the plea. He contends trial counsel did not respond to him.

4

"3. Jerry Sellers contends his trial counsel did not properly advise him concerning criminal history and consequently he is facing multiple life sentences."

The evidentiary hearing for Sellers' K.S.A. 60-1507 motion was held on March 5, 2013. Sellers was the first witness to testify. He testified that after his jury trial ended in a mistrial, his case was reset for trial on November 18, 2008. He stated that there had been no plea negotiations between the date of the mistrial and the date of his second trial, but on the morning of November 18, 2008, the State offered Sellers a plea bargain. After receiving the offer, Sellers met with his attorneys for a few hours. Initially, Sellers told his attorneys that he could not enter pleas because he could not admit to something he did not do. At some point during the discussion, Fisher told him that he had spoken with the judge and that the judge was going to be lenient if Sellers accepted the plea bargain.

Also during Sellers' meeting with his attorneys, Sellers stated that Fisher left the room and when he came back, he said that Sellers could enter an *Alford* plea to count 5. According to Sellers, Fisher explained that an *Alford* plea was a plea of not guilty in which Sellers would maintain his innocence and that it could be used to receive a lesser sentence. Sellers was confused but testified that Fisher told him that after he entered his *Alford* plea, the district court would hear his alibi for count 5 and dismiss the charge. Sellers also stated that Fisher told him they would continue attacking count 6. Sellers testified that he believed this was what was going to happen at the plea hearing.

Sellers testified that he was confused during his plea hearing and did not understand that the district court had convicted him of counts 5 and 6. He stated that he was waiting for the district court judge to remove count 5, but when the judge did not, Sellers thought it might happen at sentencing. He testified that he did not seek to withdraw his plea between the plea hearing and the sentencing hearing.

5

Sellers testified that he continued to believe that at sentencing count 5 was going to be "removed" and that he would further argue about count 6. He stated that he thought that he was convicted of the charges on the date of the sentencing hearing. Sellers testified that he tried but was unable to contact Fisher after the sentencing hearing because he wanted to withdraw his plea. Sellers stated that he wrote a letter in 2009 to the attorney handling his direct appeal asking him to withdraw Sellers' plea, but his attorney told Sellers that it was beyond his jurisdiction to do that.

Sellers stated that he did not understand his plea due to what Fisher had told him. He further testified that he did not understand the "whole point" of the plea hearing. Finally, Sellers also testified that his attorney did not tell him what effect his pleas would have on another case that they knew was pending against Sellers at the time.

Boyer testified next. He testified that Sellers' jury trial ended in a mistrial because the local newspaper had printed an article about Sellers that may have tainted the jurors. He stated that after the mistrial, the attorneys from both sides spoke to the jurors. Boyer felt that, had the case gone forward, the jury was leaning toward convicting Sellers. Because of that, he and Fisher spoke to Sellers about resetting the case for a bench trial.

Boyer remembered being prepared for a bench trial on November 18, 2008. He testified that on that date, the State suggested that the case could be resolved with a plea bargain. Boyer recalled spending about 2 hours discussing the positive and negative aspects of accepting the plea bargain. Boyer said Sellers was indecisive and was asking a lot of questions. Boyer thought that Sellers was happy with the plea agreement as long as he felt like the district court would follow the sentencing recommendation. He also stated that he and Fisher made it made it clear to Sellers that entering pleas would end his case and the next step would be sentencing. He also testified that the effect of an *Alford* plea was made clear to Sellers.

6

Boyer stated that Sellers did not contact him prior to sentencing to file a motion to withdraw his plea and that Sellers never expressed any concerns to him about his pleas prior to sentencing. He also asserted that Sellers never contacted him after sentencing to withdraw his plea. Boyer was not present at sentencing.

Fisher also testified at the hearing. He stated that he did not think a plea bargain was even an option before the prosecutor brought it up. After the possibility was presented to Sellers, Fisher stated that Sellers was adamant that he was not guilty. Fisher also testified that Sellers was concerned about his sentence and the fact that the district court judge did not have to follow the sentencing recommendation. For that reason, Fisher spoke to the district court judge who said that he did not have a desire to hammer Sellers.

Fisher testified that during his discussions with Sellers about the plea bargain, he told Sellers that there was an "outside chance" that once the district court heard the evidence, it could decide to find him not guilty of one or both of the counts to which he was entering pleas. Fisher stated, however, that he told him not to "put his money on that one." Fisher did not recall Sellers ever asking him to help him withdraw his plea.

Next, Sellers called Pamela Sue Sullivan to the stand. Sullivan represented Sellers in another criminal matter and during the hearing on his motion to withdraw his plea in this case. She stated that the motion to withdraw was denied, but that she was allowed to refile it in the form of a K.S.A. 60-1507 motion.

Finally, Christina Trocheck, the prosecutor in Sellers' case, testified. She did not recall going into the district court judge's chambers with Fisher to determine how the district court judge might rule at sentencing and said she never heard the judge say he did not want to hammer Sellers. She thought that the district court would follow the plea agreement's recommendation. She explained that she did not allow an *Alford* plea to

7

count 6 because, while Sellers had filed a notice of alibi defense covering count 5, he did not file one covering count 6. She also did not believe that there was any confusion during the November 18, 2008, plea hearing.

After the hearing, the district court asked the parties to submit proposed findings of fact and conclusions of law. In a written order filed on June 7, 2013, the district court found that Fisher had performed deficiently by incorrectly informing Sellers that there was a possibility that he could be acquitted after entering his pleas. The district court also found that Sellers was not prejudiced by this deficient performance because there was no reasonable probability that, but for Fisher's deficient performance, Sellers would have insisted on going to trial. In addition, the district court found that Sellers did not attempt to withdraw his plea prior to sentencing and that his allegation that his attorneys refused to respond to his request to withdraw his plea was not supported by the evidence. Finally, the district court found that Sellers' attorneys were not required to advise him of the effects his pleas would have on future cases because such effects constituted collateral consequences of his convictions. Sellers timely appealed the district court's judgment.

After a full evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue findings of fact and conclusions of law on all issues presented. Supreme Court Rule 183(j) (2014 Kan. Ct. R. Annot. 285). A claim alleging ineffective assistance of counsel presents mixed questions of fact and law. Appellate courts review the underlying factual findings for support by substantial competent evidence and the legal conclusions based on those facts de novo. *State v. Cheatham*, 296 Kan. 417, 430, 292 P.3d 318 (2013). Substantial evidence is such evidence that a reasonable person might accept as sufficient to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012). On review for substantial evidence, this court does not reweigh conflicting evidence, pass on the credibility of witnesses, or substitute its evaluation of the evidence for the district court's. Further, it must accept as true all evidence and inferences drawn

8

from the evidence that support or tend to support the district court's findings. *State v. Brown*, 300 Kan. 542, 546, 331 P.3d 781 (2014).

"To support a claim of ineffective assistance of counsel based on counsel's performance, a defendant must demonstrate that (1) counsel's performance was deficient and (2) counsel's deficient performance was sufficiently serious to prejudice the defense and deprive the defendant of a fair trial." *Edgar v. State*, 294 Kan. 828, 837, 283 P.3d 152 (2012). In order to show an attorney's performance was deficient, a defendant must "demonstrate counsel's representation fell below an objective standard of reasonableness, considering the entire circumstances attendant to the case." *Cheatham*, 296 Kan. at 431. When the conduct at issue preceded a guilty or no contest plea, prejudice must be shown by establishing "a reasonable probability that, but for the deficient performance, the defendant would have insisted on going to trial instead of entering the plea." See *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

The district court found that the first prong of the test for ineffective assistance of counsel was satisfied because Fisher incorrectly informed Sellers that there was an "'outside chance'" that he would be found not guilty by the district court after he entered his pleas. This finding is supported by substantial evidence because Fisher admitted to providing this advice to Sellers. This amounted to deficient performance because it was a misstatement of law. Sellers had previously pled not guilty to all the charges alleged by the State in this case. This put in issue every material fact alleged by the State. See K.S.A. 22-3209. Under K.S.A. 2014 Supp. 22-3210(a), a district court has discretion as to whether to accept a guilty or no contest plea before or during a trial. But the district court's refusal to accept such pleas would not have amounted to a finding of not guilty. Rather, Seller's original not guilty plea would have remained in force, and all material facts would have remained in issue, necessitating a trial. See K.S.A. 2014 Supp. 22-3209.

9

Because Fisher performed deficiently by informing Sellers that there was a chance he could be acquitted after entering his pleas, this court must consider the second prong under the test for ineffective assistance of counsel. Sellers begins his argument on this issue by stating that the question before this court is "whether, absent counsel's flawed advice, there is a probability that the outcome of a jury trial would have been different." But as noted above, this is not the correct test for prejudice. Rather, the correct test is whether there is a reasonable probability that, but for Fisher's flawed advice, Sellers would have insisted on going to trial instead of entering pleas. See *Kelly*, 298 Kan. at 970.

Later, Sellers again appears to misstate the proper test for prejudice. He states in his brief that he "must show that because of ineffective assistance of his counsel, the plea wasn't voluntary, and that there is a reasonable probability but for counsel's errors that the defendant would not have pleaded guilty and would have insisted on going to trial." He appears to suggest that he must show two things: that his plea was involuntary *and* that he would have gone to trial. But the Supreme Court has made clear that voluntariness is not a separate analysis in the context of an ineffective assistance of counsel claim. To put the test in its proper context, the Supreme Court has found:

> "To set aside a guilty or nolo contendere plea because ineffective assistance of counsel has rendered the plea involuntary, a defendant must show that counsel's performance fell below the standard of reasonableness and that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded either guilty or nolo contendere and would have insisted on going to trial." *State v. Shears*, 260 Kan. 823, Syl. ¶ 2, 925 P.2d 1136 (1996) (analyzing a motion to withdraw a plea under K.S.A. 22-3210).

Therefore, despite Sellers' contentions in his brief, the only question we must address is whether the district court erred by finding that there was no reasonable

possibility that, but for Fisher's statements that Sellers could be acquitted after his pleas, Sellers would have insisted on going to trial.

Sellers argues on appeal that there was ample evidence presented in his motion and at the evidentiary hearing that he would have insisted on going to trial had Fisher not misled him. But he largely supports this assertion with facts indicating that, prior to November 18, 2008, Sellers wanted to go to trial and his attorneys believed he had a strong defense. Yet, he admits that there had been no plea negotiations prior to November 18. Fisher testified that it was the State that originally offered the plea bargain and that he did not believe a plea bargain was even an option before that time. The mere fact that Sellers and his attorneys were ready to go to trial and were hopeful about the outcome *before* being offered a plea bargain does not establish that Sellers would have insisted on going to trial *after* hearing the proposed terms of the plea agreement and receiving proper advice from his attorneys.

Sellers next argues that Fisher caused Sellers to misunderstand the effect of an *Alford* plea and that this misunderstanding caused Sellers to believe after he gave his *Alford* plea to one of the counts, that count would be dismissed. But the district court found that there was no reasonable probability that Sellers would have gone to trial had this misunderstanding not occurred. Specifically, it found that the record clearly indicated that Sellers expected to be found guilty of counts 5 and 6 in exchange for the dismissal of the four other counts against him. It also found that he accepted the benefit of his bargain knowingly, intelligently, and voluntarily. These findings are supported by substantial evidence.

First, in his written tender of plea, Sellers confirmed that he was fully informed of the defenses in his case and that he had a right to a trial. The written tender also included a statement in which Sellers waived his right to a jury trial and asserted that he understood that the district court would convict him of the charges to which he was

11

pleading guilty or no contest. The tender also made clear that he would only be required to plead to counts 5 and 6 in his complaint, all other counts would be dismissed, and the parties would recommend a controlling prison sentence of 128 months.

It is important to note that Fisher testified at the evidentiary hearing that at some point he advised Sellers that his *Alford* plea was *not* a guilty plea. But this is again a misstatement of law. "An *Alford* plea is a 'plea of guilty to the charge without admitting to the commission of the offense.'" *State v. Case*, 289 Kan. 457, 460, 213 P.3d 429 (2009). This is important given that the written tender of plea merely indicated that Sellers would be convicted of all charges to which he pled guilty or no contest.

But the record reflects that by the time of the plea hearing, there was no confusion about the proper form of Sellers' *Alford* plea. Prior to entering the plea, Fisher stated "we understand the procedure under the *Alford* plea he is required to enter a plea of guilty. . . ."After making this statement, Sellers explicitly confirmed that he understood what Fisher had said. When it was time for Sellers to enter his plea, he originally stated, "[n]ot guilty, Your Honor, with the *Alford* plea." When the prosecutor began to interject, Sellers interrupted her and immediately changed his plea to guilty pursuant to *Alford*. The district court then asked Sellers if he meant to plead guilty under *Alford*, and Sellers confirmed that he did. Finally, after the State had laid out its factual basis for the charge and Fisher had informed the district court of Sellers' alibi, the district court inquired whether Sellers acknowledged that the State's evidence was sufficient to convict him notwithstanding his proffered alibi. Sellers stated that he did.

In further support of the district court's finding that Sellers did not suffer prejudice from Fisher's deficient performance, substantial evidence supports the district court's finding that Sellers did not rely on Fisher's comments regarding the possibility of an acquittal after entering his pleas. Fisher testified that he told Sellers that a finding of not guilty was a "long shot" and not to put his money on it. At his plea hearing, Fisher made

12

it clear that Sellers was entering his *Alford* plea because, had he gone to trial, he could have faced as many as 450 months in prison. Sellers agreed with this statement. At sentencing, Sellers maintained his innocence but stated that he took the plea because he was told he could face up to 600 months in prison.

Sellers readily acknowledges that he gave the appearance to the court that his plea was made knowingly, intelligently, and voluntarily. But he now asserts that he only did so because he was "duped" by Fisher's bad advice. In support of this assertion, he cites only his own testimony at the evidentiary hearing that he did not understand his plea. Even if the district court had found Sellers' testimony credible on the issue of prejudice, Sellers never testified that he would not have taken the plea deal had he understood that there was no chance of acquittal with the *Alford* plea. At base, Sellers asks this court to infer what Sellers never explicitly testified to, then find that inference and Sellers' testimony more credible than the evidence the district court relied upon in finding there was no prejudice. This is merely an invitation for this court to reweigh the evidence, which it cannot do. Substantial evidence supports the findings that lead the district court to conclude that Sellers failed to establish the prejudice prong of his ineffective assistance of counsel claim.

Sellers next argues that the district court erred by rejecting his claim that he attempted to contact his attorneys to file a motion to withdraw his plea prior to sentencing. Sellers, however, fails to cite any evidence or testimony that he attempted to withdraw his plea prior to sentencing. At the evidentiary hearing on his motion, Sellers testified that he only tried to contact Fisher to withdraw his plea *after* his sentencing. Further, the district court specifically found that neither Fisher nor Boyer received any correspondence or contact from Sellers requesting them to file a motion to withdraw his plea. This finding is supported by the testimony of both Fisher and Boyer to that effect. For this reason alone, Sellers' claim on this issue fails.

13

In addition, Sellers did file a timely pro se motion to withdraw his plea after sentencing. This motion was denied. Sellers does not argue, nor does the record reflect, that this outcome would have been different had Fisher or Boyer responded to his alleged attempts to contact them. Therefore, Sellers cannot establish the prejudice necessary to succeed in a claim of ineffective assistance of counsel.

Finally, Sellers argues that his attorneys provided ineffective assistance of counsel because they failed to discuss the ramification of his pleas with him. Specifically, he asserts that they should have informed him of the possibility that, in the event of a subsequent conviction, he could receive a sentence *consecutive* to his sentence in this case. This claim was not raised below. In Sellers' motion, he claimed that his attorneys never advised him that having three or more convictions would result in a life sentence on a future case. The pretrial order indicated that Sellers contended that his attorneys "did not properly advise him concerning criminal history and consequently he is facing multiple life sentences." From these allegations, it does not appear that Sellers took issue with his attorneys' failure to inform him about the possible consecutive nature of future sentences at the district court level. Issues not raised before the district court may not be raised on appeal. *State v. Brown*, 300 Kan. 565, 590, 331 P.3d 797 (2014).

But even assuming the issue is properly before this court, Sellers' claim should still fail. A defense attorney who fails to inform his or her client of collateral consequences of a plea does not provide constitutionally deficient representation. Furthermore, the effect of a conviction on a defendant's future criminal history is a collateral consequence of a plea. *State v. Barahona*, 35 Kan. App. 2d 605, 611-12, 132 P.3d 959, *rev. denied* 282 Kan. 791 (2006). Therefore, the district court correctly found that Boyer's and Fisher's performances were not deficient in this regard.

Affirmed.